| | |
|---|---|
| WO | JDN |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Melinda Gabriella Valenzuela,

    Plaintiff,

vs.

Patricia Schmidt, et al.,

    Defendants.

No. CV 18-01189-PHX-MTL (MHB)

**ORDER**

    Plaintiff Melinda Gabriella Valenzuela, who is confined at the Arizona State Prison Complex (ASPC)-Florence Kasson Unit, brought this pro se civil rights action under 42 U.S.C. § 1983 against former Arizona Department of Corrections (ADC) Director Charles Ryan. (Doc. 10.) Before the Court is Plaintiff's Motion for Preliminary Injunction. (Doc. 53.) The Court will deny Plaintiff's Motion. The Court will also order that ADC Director David Shinn be substituted as a Defendant in his official capacity for purposes of Plaintiff's claim for injunctive relief.

**I.    Background**

    In her Complaint, Plaintiff alleged that beginning in February 2018, Defendant Ryan failed to provide her with safe housing. (Doc. 10 at 4.) According to Plaintiff, she has been the subject of constant abuse and assaults due to her transgender status. (*Id.*) Plaintiff claimed that Defendant Ryan was personally aware of her issues because inmate letters were sent to him directly; yet, he did nothing. (*Id.*) Plaintiff sued for injunctive relief and

monetary damages. (*Id.* at 6.) The Court determined that Plaintiff's allegations sufficiently stated a plausible Eighth Amendment failure-to-protect claim, and Defendant Ryan was directed to answer this claim. (Doc. 18 at 6.)

On August 16, 2019, Plaintiff filed the pending Motion for Preliminary Injunction. (Doc. 53.) Plaintiff asserts that she was recently moved to Kasson Unit, and, upon her arrival at this Unit, she informed multiple staff members—ADC and medical personnel whom she lists by name—that certain prisoners threatened her and plan to harm her. (*Id.* at 1.) Plaintiff states that she provided the names of these prisoners to staff. (*Id.*) According to Plaintiff, no staff members took any action in response, and they have left her housed in the pod. (*Id.*) Plaintiff alleges that since June 3, 2019, she has been sexually assaulted, assaulted, and threatened daily by other prisoners. (*Id.* at 1–2.) Plaintiff asserts that she will continue to suffer and be subject to irreparable harm due to her transgender status as long as she is housed in the Kasson Unit. (*Id.* at 2.) Plaintiff explains that she is currently attempting to get ADC staff to "sign her out of PS [protective segregation]," and send her to the Integrated Housing Program or a sexual offender yard. (*Id.*)

With her Motion, Plaintiff submits over 200 documents, including medical records and inmate letters, many of which are from 2018. (*Id.*, Exs.) The inmate letters report threats, PREA incidents, and staff misconduct; request transfers, medical care, and to see the transgender committee; and complain about certain prison programs. (*Id.*) With respect to the inmate letters filed since her recent transfer to the Kasson Unit, Plaintiff's complaints include that PS prisoners are with general population prisoners in the same programs and that every day she comes into contact with general population prisoners, STG (security threat group) prisoners, and prisoners who are debriefing. (*Id.*, Exs. G, K (Doc. 53 at 19, 32).)

In response, Defendant Ryan argues that the Motion should be denied because Plaintiff agreed to dismiss this case in a Settlement Agreement that was entered in another action and that the parties are working on the logistics of dismissing the cases listed in that Agreement. (Doc. 54, citing to CV 18-00555-DLR.)

Plaintiff filed a Reply, in which she stated that the Settlement Agreement was not accepted, that not all parties have signed the Agreement, and that the defendants in the other action have not complied with terms of the Agreement. (Doc. 56.) Attached to the Reply is a copy of an August 7, 2019 letter Plaintiff wrote to defense counsel informing him that if he sends an email to the Deputy Warden confirming that Plaintiff is to be provided certain items, Plaintiff will sign the Agreement in CV 18-00555. (*Id.*, Attach. (Doc. 56 at 6).)

To date, there has been no stipulation for dismissal filed by the parties in this action.

## II. Preliminary Injunction Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right") (citation omitted). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this "serious questions" version of the sliding-scale test, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. *See Alliance for the Wild Rockies*, 632 F.3d at 1135.

The movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). There is a

1  heightened burden where a plaintiff seeks a mandatory preliminary injunction, which
2  should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent.
3  Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act (PLRA) imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

**III. Discussion**

Prison officials are required to take reasonable measures to guarantee the safety of prisoners, and officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). In February 2019, the Court addressed a similar request for injunctive relief by Plaintiff. (Doc. 35.) The Court determined that Plaintiff's status as a transgender prisoner, who has already been attacked, supports her claim that she is subject to irreparable harm. (*Id.* at 4–5.) *See Farmer*, 511 U.S. at 848 (remanding to decide whether admission that transgender women are "likely to experience a great deal of sexual pressure in prison" rendered the risk of Farmer's assault obvious); *Stover v. Corrs. Corp. of Am.*, No. 12–cv–00393, 2015 WL 874288, at *10 (D. Idaho Feb. 27, 2015) (because the defendants were aware that the plaintiff was a transgender prisoner housed in a dorm with 58 male sex offenders who might exploit or assault the plaintiff, the inference could be drawn that the plaintiff faced a substantial risk of serious harm at the hands of other prisoners). But at that time, Plaintiff indicated that she was housed in PS, and she failed to explain why her PS housing status was not sufficient to protect her from the risk of attack by other prisoners and, therefore, she failed to show that irreparable injury was likely absent an injunction. (*Id.* at 5.)

Plaintiff moved for injunctive relief again in April 2019. (Docs. 40–41.) In its May 16, 2019 Order, the Court found that because the evidence showed Plaintiff was still housed in PS, and she did not participate in recreation or meals with other prisoners, her housing

status was a reasonable response to the threat to safety posed by her transgender status. (Doc. 45 at 4.) Plaintiff's request for injunctive relief was again denied. (*Id.*)

In her pending Motion, Plaintiff indicates that she is in PS housing. (Doc. 53 at 2.) Based on some of her inmate letters, it appears that despite Plaintiff's PS housing status, she is involved in programs with general population and STG prisoners. (*Id.*, Exs. G, K.) But, in her Motion, Plaintiff fails to specifically explain her current housing status and her interaction, if any, with other prisoners, and she did not cite to any particular document attached to her Motion. Moreover, she states that she is attempting to get out of PS housing, which would seem to place her at a greater risk of harm from other prisoners. Plaintiff's allegations that since June 3, 2019, she has been assaulted and threatened are vague, as is her request for injunctive relief. Plaintiff requests a hearing on her Motion but does not otherwise request specific relief, although it appears that she seeks an order for a transfer out of the Kasson Unit. Finally, Plaintiff's Reply does not provide any information regarding her housing status or the alleged risk to her safety, nor does it seek any specific relief except a request for a hearing. (Doc. 56 at 2.)

In short, Plaintiff fails to provide specific allegations or facts to show that her current PS housing status is insufficient to protect her from harm by other prisoners, nor does she articulate a request for specific relief that is narrowly drawn as required under the PLRA. Her Motion for Preliminary Injunction will therefore be denied without prejudice to refiling.

**IV. Substitution**

Under Federal Rule of Civil Procedure 25(d), when an officer sued in his or her official capacity dies, resigns, or otherwise ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party." To the extent Plaintiff seeks injunctive relief, she states an official capacity claim against the ADC Director. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (a person cannot be sued in his or her official capacity for money damages; only injunctive relief is available against a defendant in his or her official capacity). Defendant Ryan is no longer the ADC Director; David

Shinn has been appointed as the new ADC Director.[1]  Accordingly, David Shinn will be automatically substituted as Defendant for Plaintiff's official capacity claim for injunctive relief.[2]

**IT IS ORDERED:**

(1) The Clerk of Court must update the docket to reflect Plaintiff's current address as:

> #172770
> ASPC Florence Kasson Unit
> P.O. Box 8200
> Florence, Arizona 85132

(2) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Preliminary Injunction (Doc. 53).

(3) Plaintiff's Motion for Preliminary Injunction (Doc. 53) is **denied**.

(4) David Shinn is substituted as Defendant for Plaintiff's official capacity claim for injunctive relief.  Ryan remains a Defendant in this action as to Plaintiff's damages claim.

**Dated this 3rd day of December, 2019.**

_Michael T. Liburdi_
Michael T. Liburdi
United States District Judge

---

[1] On October 7, 2019, Governor Doug Ducey announced the appointment of David Shinn as ADC Director, and his first day as Director will be October 21, 2019. *See* https://azgovernor.gov/governor/news/2019/10/governor-ducey-names-david-shinn-department-corrections-director (last visited Oct. 10, 2019).

[2] Defendant Ryan remains a Defendant as to Plaintiff's Eighth Amendment claim for damages against Ryan in his individual capacity as a supervisor.